# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **PAUL FEKETE,** | : | |
| **Plaintiff,** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **NATIONAL RAILROAD** | : | |
| **PASSENGER CORPORATION, et al.** | : | **No. 11-6570** |
| **Defendants.** | : | |

## <u>MEMORANDUM</u>

**Schiller, J.**                                                                                    **August 6, 2012**

The National Railroad Passenger Corporation ("Amtrak") has a contract with Dyer Quarry, Inc. ("Dyer") that includes an indemnification provision. Amtrak argues that this indemnification provision is applicable to the action presently before the Court, in which Paul Fekete sued Amtrak and Rob's Towing and Hauling, Inc. ("Rob's Towing") for negligence after Fekete's dump truck was damaged on Amtrak's property. Amtrak moved for declaratory relief that Dyer must indemnify it. Because the Court disagrees with Amtrak's reading of the indemnification provision, Amtrak's motion is denied.

## I.      BACKGROUND

On June 21, 2010, Fekete was operating his dump truck to deliver stone from Dyer to Amtrak's property on Mill Road in Bensalem, Pennsylvania. (Am. Compl. ¶¶ 8, 10.) During the delivery, an agent of Amtrak directed Fekete to proceed down an unstable access road. (*Id.* ¶ 11.) Fekete's dump truck sank into the ground and an Amtrak employee negligently attempted to move the vehicle. (*Id.* ¶¶ 12-13.) Amtrak contacted Rob's Towing to remove the dump truck, and an employee of Rob's Towing negligently hooked the tow truck to the front of the dump truck, which

caused additional damage. (*Id*. ¶¶ 15-19.) The Amtrak employee abandoned the scene. (*Id*. ¶ 15.) The dump truck remained stuck until June 22, 2010, when it tipped over onto its side and was totaled. (*Id*. ¶ 20.) Fekete sued Amtrak and Rob's Towing for the property damage they caused and his lost wages.

Amtrak filed a third-party Complaint against Dyer for contribution and indemnity. According to Amtrak, Fekete was delivering the stone that Amtrak had purchased from Dyer on behalf of Dyer and "[p]ursuant to paragraph 24 of the General Provisions for Supplies Contracts Funded by the United States . . . Dyer Quarry, Inc. has a duty to defend, indemnify and hold harmless [Amtrak] for any and all damages allegedly sustained by Paul J. Fekete on June 21, 2010." (Amtrak's Third-Party Compl. ¶ 8.)

> According to the indemnification agreement between Dyer and Amtrak:
>
> Contractor agrees to defend, indemnify, and hold harmless Amtrak, its officers, directors, employees, agents, servants, successors, assigns, and subsidiaries (collectively "Indemnified Parties"), from and against any claims, losses, liabilities (including without limitation environmental liabilities), penalties, fines, demands, causes of action, suits, costs and expenses incidental thereto, (including costs of defense and attorneys' fees) (collectively "Claims"), which any of the Indemnified Parties may hereafter incur, be responsible for or pay as a result of breach of warranty, injury or death of any person, or damage to or loss (including loss of use) of any property, including property of parties hereto, arising out of or in any degree directly or indirectly caused by or resulting from supplies, material, deliverables, products or equipment supplied by, or from activities or, or work performed by Contractor, Contractor's officers, employees, agents, servants, subcontractors, or any other person acting for or with the permission of Contractor under the Contract, or as a result of Contractor's failure to perform its obligations in compliance with the Contract Documents.

(Amtrak's Mot. for Declaratory J. Ex. B [Indemnification Contract] ¶ 24.)

The parties engaged in discovery and motion practice, and on July 9, 2012, Amtrak filed the

motion for declaratory judgment now before the Court.[1] Amtrak believes that the above-quoted language entitles it to indemnification from Dyer for any liability arising out of the incident involving Fekete's dump truck.

## II.    DISCUSSION

Amtrak contends that "[t]he incident which forms the basis of this litigation involves a claim by a subcontractor of Dyer Quarry, Paul Fekete d/b/a Big Evil Trucking, for damages and injury to his property which were allegedly incurred as a result of work performed under the Contract between Amtrak and Dyer Quarry." (Amtrak's Mem. of Law in Supp. of Mot. for Declaratory Relief [Amtrak's Mem.] at 3.) According to Amtrak, the language of its agreement with Dyer is broad enough to encompass Amtrak's own negligence.[2] The parties agree that under the contract, the laws of the District of Columbia apply to the interpretation of the parties' agreement. (*Id*. ¶ 13.)

An indemnitor may agree to indemnify an indemnitee against the indemnitee's own

---

[1] A motion for declaratory judgment is not recognized under the Federal Rules of Civil Procedure, though the title of Amtrak's motion is irrelevant to the outcome here. *See Lindsay v. Pa. State Univ.*, Civ. A. No. 06-1826, 2008 WL 1376273, at *3 (M.D. Pa. Apr. 9, 2008) ("Rule 57 of the Federal Rules of Civil Procedure simply states that the Federal Rules of Civil Procedure govern the procedure for obtaining a judgment under the Declaratory Judgment Act. It does not provide a basis for making a motion.").

[2] To date, Amtrak is under no obligation to pay any monies because its liability has not yet been determined. There is caselaw that suggests that until Amtrak is required to pay money in this lawsuit, its request for a declaratory judgment seeking indemnification is not yet ripe. *See Casanova v. Marathon Corp.*, 256 F.R.D. 11, 13-14 (D.D.C. 2009) (noting that claim for indemnification does not accrue until the party seeking indemnification is held liable and makes a payment). The parties, however, have not raised the issue, and the Court uncovered no District of Columbia law that would bar the Court from deciding the issue now. *See Cevasco v. Nat'l R.R. Passenger Corp.*, 606 F. Supp. 2d 401, 410 (D.D.C. 2009). As the Court's ruling does not depend upon Amtrak ultimately being found negligent, there is no need for the Court to await a finding on that question.

negligence. *See Princemont Constr. Corp. v. Balt. & Ohio R.R.*, 131 A.2d 877, 878 (D.C. 1957).

However, if a contract fails to explicitly cover the indemnitee's own negligence, the intent to cover

such losses must otherwise plainly appear from the agreement. *Moses-Ecco Co. v. Roscoe-Ajax

Corp.*, 320 F.2d 685, 687 (D.C. Cir. 1963). Though no magic words are required, the intent to waive

negligence must be clear. *Id.* at 688; *see also Rivers & Bryan, Inc. v. HBE Corp.*, 628 A.2d 631, 635

(D.C. 1993) ("If parties seek to provide indemnification not just for the actions of the indemnitor,

but also for the actions of the indemnitee . . . when the indemnitee is itself negligent . . . there must

be a clear intention to do so that is apparent from the face of the contract.").

Amtrak relies largely on *Moses-Ecco* to support its argument that Dyer agreed to indemnify

Amtrak for its negligence. In that case, George Williamson, who worked for Moses-Ecco, sued

Roscoe-Ajax, a general contractor, for negligence because it failed to properly install and maintain

guards rails, causing Williamson to fall several stories and suffer serious injuries. Roscoe-Ajax filed

a third-party complaint against Moses-Ecco, its subcontractor for concrete work, for indemnification

based upon an agreement between the parties. Following a bench trial after the underlying lawsuit

settled, the court entered judgment in favor of Roscoe-Ajax and against Moses-Ecco on the

indemnification issue. In its appeal, Moses-Ecco argued that "the indemnification provision of the

subcontract lacks the positiveness which the law requires to indemnify Roscoe-Ajax for its own

affirmative negligence." *Moses-Ecco*, 320 F.2d at 687.

The provision in question read:

The Subcontractor (Moses-Ecco) agrees in the performance of this contract * * * that
he will at all times indemnify and save harmless the Owner and the Contractor
(Roscoe-Ajax) against any loss, because of injury or damage to persons or property
arising or resulting from the performance of this contract, including any and all loss,
cost, damage or expense which the Owner and/or Contractor may sustain or incur on

account of any claim, demand or suit made or brought against them or either of them by or on behalf of any employee of (Moses-Ecco) * * *.

*Id*.

The court concluded that the terms of the contract were sweeping enough to indemnify Roscoe-Ajax against any and all claims by or on behalf of any Moses-Ecco employee. *Id*. at 688. "Moreover, it would appear that no valid claim by an employee of Moses-Ecco could arise against Roscoe-Ajax except through Roscoe-Ajax's own negligence. Consequently to exclude losses caused by Roscoe-Ajax's negligence would deprive that part of the clause which refers to the claims by employees of Moses-Ecco against Roscoe-Ajax of virtually the only meaning it can possibly have." *Id*.

Amtrak contends that it should be indemnified for its negligence surrounding delivery of the stone Amtrak because the "operative language in [its contract with Dyer] is nearly identical to the breadth of the language found in *Moses-Ecco*." (Amtrak's Mem. at 6.) In its reply, Amtrak also cites *W.M. Schlosser Co. v. Maryland Drywall Co.*, 673 A.2d 647 (D.C. 1996), to bolster its argument. (Amtrak's Resp. to Dyer's Opp'n to Amtrak's Mot. for Declaratory Relief [Amtrak's Reply] at 6-7.) The contract in *Schlosser* provided indemnity for "the General Contractor and the Owner from any and all claims, liabilities and expenses for property damage or personal injury; including death, arising out of or resulting or in connection with the execution of the work provided for in this Agreement." *W.M. Schlosser*, 673 A.2d at 653. The court held that there was no difference between the indemnity provision in *Schlosser* and the corresponding provision in *Moses-Ecco*. *Id*. at 654. Therefore, the provision was sufficiently comprehensive, broad, and unambiguous to cover damage caused by the indemnitee's negligence. *Id*.

The Court does not read the indemnification provision in this case as broadly as Amtrak.

5

Rather, the Court agrees with Dyer that this case is more like *District of Columbia v. Royal*, 465 A.2d 367 (D.C. 1983), in which the D.C. Court of Appeals considered whether an indemnification provision applied when a child was injured by a falling pole at a school construction site. *Id*. at 368. The child's mother sued the school district and the contractor. *Id*. The school district alleged that the contractor negligently performed its construction work, and the contractor alleged that the school district negligently failed to supervise the school children in the construction area. *Id*. The contract between the school district and the contractor included an indemnification clause that stated:

> [T]he Contractor shall indemnify . . . the District . . . against any and all claims or liability arising from or based on, or as a consequence of or result of, any act, omission, or default of the Contractor, his employees, or his subcontractors, in performance of, or in connection with, any work required, contemplated or performed under the Contract.

*Id*.

The court held that the policy provision did not manifest a clear intention to shift responsibility for the school district's negligence onto the contractor. *See id*. at 368-69. The court, relying on the United States Supreme Court's analysis of a similar indemnification provision, stated that the provision clearly made the contractor liable for its own negligence, but could not be extended to encompass the school district's negligence. *Id*. at 369 (citing *United States v. Seckinger*, 397 U.S. 203 (1970)).

The D.C. Court of Appeals again confronted the scope of an indemnification provision in *Rivers & Bryan, Inc. v. HBE Corp.*, 628 A.2d 631, 637 (D.C. 1983). In that case, the indemnification provision stated:

> Subcontractor agrees to observe and comply with all federal, state and local statutes and/or ordinances relating to the performance of this subcontract (including the Occupational Safety and Health Act of 1970, as amended),* to assume all responsibilities of the Contractor thereto, and to indemnify and hold harmless

Contractor from all penalties, damages or other loss resulting from subcontractor's failure to do so. Subcontractor shall pay the costs of permits and licenses required to perform this subcontract.

\* Subcontractor is not responsible for others who are not in conformance with OSHA.

*Id*. at 634.

An employee of the subcontractor sued the contractor and the subcontractor after he fell through a hole in the roof of a work site. *Id*. at 632-33. The Occupational Safety and Health Administration cited both the contractor and the subcontractor for violations of the Occupational Safety and Health Act. *Id*. at 633. The court emphasized that the indemnification clause specifically indemnified the contractor for the subcontractor's actions but not for the contractor's actions. *Id*. at 637. This specific language persuaded the court that Rivers & Bryan was not required to indemnify HBE for HBE's own negligence. *Id*.

Furthermore, the court in *Rivers & Bryan* distinguished the ruling in *Moses-Ecco* because the indemnification clause in *Moses-Ecco* broadly covered "any loss because of damage or injury to persons or property arising or resulting from the performance of this contract." *Id*. at 636. By contrast, the indemnification clause in *Rivers & Bryan* covered "all penalties, damages, or other loss resulting from Subcontractor's failure to [comply with the clause]." *Id*. The crucial difference between these two clauses is that the *Rivers & Bryan* clause was limited to lawsuits arising from actions of the subcontractor while the *Moses-Ecco* provision contained no such limitation. *Id*.

Similar to the language contained in the indemnification clause in the *Royal* and *Rivers & Bryan* cases, the language at issue here specifically references "supplies, material, deliverables, products or equipment supplied by, or from activities or, or work performed by Contractor,

7

Contractor's officers, employees, agents, servants, subcontractors, or any other person acting for or

with the permission of Contractor under the Contract, or as a result of Contractor's failure to perform

its obligations in compliance with the Contract Documents." (Indemnification Contract ¶ 24.) All

of the entities listed in this provision are persons controlled by or at least directed by Dyer, the

contractor. Based on the facts of this case, that does not include Amtrak. Amtrak leaves out key

language when it states that it must be indemnified "for any claims which Amtrak may incur as a

result of damage to property 'arising out of or in any degree directly or indirectly . . . resulting from

activities . . . under the contract.'" (Amtrak's Reply at 7) (alterations in original). This quotation fails

to include any of the language that limits the class of entities entitled to indemnification under the

contract. Of course, without this language, the provision in question reads similarly to that in *Moses-*

*Ecco*, in which indemnification was required. With the excised language returned, however, the

clause reads more like that in *Royal*, which was not broad enough to include the negligence of the

indemnitee. The Court will not read out of the indemnification provision the exact words that render

Dyer free from any obligation to indemnify Amtrak for Amtrak's negligence.

  Furthermore, the indemnification provision in the parties' contract includes a second clause

that applies to personal injury cases and reads:

> In addition to the foregoing, Contractor agrees to defend, indemnify and hold
> harmless [Amtrak, its officers, directors, employees, agents, servants,
> successors, assigns and subsidiaries], irrespective of any negligence or fault
> on the part of [Amtrak, its officers, directors, employees, agents, servants,
> successors, assigns and subsidiaries], from and against any Claims which
> [Amtrak, its officers, directors, employees, agents, servants, successors,
> assigns and subsidiaries] may hereafter incur, be responsible for or pay as a
> result of injuries (including death) to any of Contractor's employees, agents
> or subcontractors.

(Indemnification Contract ¶ 24(B).)

This provision clearly requires indemnification of Amtrak in certain personal injury cases, even if Amtrak is negligent. Amtrak dismisses this provision as "superfluous" and as "only applicable to physical injury to Contractor's employees, agents or subcontractors." (Amtrak's Reply at 8.) This Court is not so quick to dismiss an entire portion of an indemnification provision as superfluous. *See Air Line Pilots Ass'n, Int'l v. Pension Benefit Guar. Corp.*, 193 F. Supp. 2d 209, 218 n.4 (D.D.C. 2002) (noting that courts should not read statutes or contracts in a way that would render a clause, word, or sentence meaningless or superfluous). Obviously, Amtrak was able to phrase the terms of this contract provision to include an indemnification provision that covered Amtrak's negligence under different circumstances. While Amtrak is correct that no particular words or language is necessary to ensure the scope of an indemnification provision reaches an indemnitee's negligence, the Court finds it telling that one paragraph below the provision at issue in this litigation, Amtrak was able to unambiguously ensure that Dyer indemnified Amtrak for Amtrak's negligence. The language presently before the Court fails to speak in such broad terms that evince an intent to include Amtrak's negligence in the indemnification clause.

Finally, Amtrak directs this Court to a federal statute that, according to Amtrak, has been interpreted to remove all obstacles to the enforceability of contracts to indemnify Amtrak. (Amtrak's Mem. at 3-4; Amtrak's Reply at 1-2.) The statute assures that "[a] provider of rail passenger transportation may enter into contracts that allocate financial responsibility for claims." 49 U.S.C. § 28103(b). This principle is not in dispute here. If the indemnification provision before this Court was clear that Amtrak and Dyer intended that Dyer would indemnify Amtrak for Amtrak's negligence, neither federal law nor the laws of the District of Columbia would prevent this Court from giving full effect to that intent. But the Court will not redraft the provision to ensure it includes

9

the sweeping language Amtrak failed to include. Indeed, the plain language of the statute Amtrak cites indicates that it remains in the control of the rail passenger transportation provider to properly ensure it allocates financial responsibility for claims. Thus, this Court's ruling is not that Amtrak cannot be indemnified for its negligence, but rather that in this case, it is not indemnified for its negligence.


III.     CONCLUSION

As this Court is not "firmly convinced" that the parties intended for Dyer to indemnify Amtrak for Amtrak's negligence, Amtrak's motion is denied. *See W.M. Schlosser*, 673 A.2d at 653 (quoting *Seckinger*, 397 U.S. at 213). An Order consistent with this Memorandum will be docketed separately.